HINCHMAN et al. v. PARLIN & ORENDORFF CO.

(Circuit Court of Appeals. Fifth Circuit. May 5, 1896.)

No. 454.

1. EVIDENCE—DECEASED PERSONS—REV. ST. § 858.
    The husband of a deceased party, defending an action as her executor, is not precluded, by Rev. St. § 858, from testifying to incidents, occurring with third parties for the benefit of the deceased, as to which she, if living, could not have given testimony to contradict his, although in such transactions he acted at the time as her agent.

2. FRAUDULENT CONVEYANCES—QUESTION FOR JURY.
    Though a conveyance of property by a husband to his wife, made when he is in embarrassed circumstances, will be scrutinized closely, and will not be permitted to cloak a fraudulent purpose, a preference in good faith of a wife's claim will not raise a presumption of fraud, and the inferences to be drawn from the time when such a conveyance is made, from the condition of the grantor's business, and from the deed itself are questions for a jury, and as to which, in an action involving the same, counsel have a right to argue to the jury.

In Error to the Circuit Court of the United States for the Northern District of Texas.

D. A. Kelly, for plaintiffs in error.

U. F. Short, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

McCORMICK, Circuit Judge. This is a statutory action for trial of the right to personal property taken under judicial process. The defendant in error, the Parlin & Orendorff Company, held a judgment against Acanthus Hinchman and others, on which execution issued and was levied on the personal property in question. When the marshal had made the seizure, the claimant, Martha A. Hinchman, made her affidavit and bond under the statute, the property was surrendered to her, due return made of the affidavit and bond, and this cause docketed for trial. The plaintiff in the execution (the defendant in error here) tendered issues, showing its judgment, the execution issued thereon, the levy on the property in the possession and control of Acanthus Hinchman, one of the defendants in the execution, and averring that the property was owned by Acanthus Hinchman, was subject to the execution, and was of the value of $3,000. Before the trial, the claimant died testate. Acanthus Hinchman, named executor in her will, qualified as such executor, and replied to the issues tendered that the claimant was not liable for the plaintiff's judgment; that the property seized was not of the value of more than $2,325; that the property was a part of the sep-

arate estate of the claimant, Martha A. Hinchman, the wife of Acanthus Hinchman; that it was purchased with the proceeds of her separate estate, and was taken by her in payment of debts which he owed her for funds of hers which he had used in his business; that he, as her husband, was the lawful custodian and manager of her separate estate, and in that capacity held and controlled the property at the time of the seizure, for her, and as her agent. The proof showed that Acanthus and Martha A. Hinchman had been husband and wife from January, 1856, to her death; that before their marriage she had no separate estate; that her father then gave her three or four hundred dollars; that she afterwards inherited from her father about $800, and from an uncle about $100; that while they resided in Missouri the husband invested the claimant with title to certain real estate near Pleasant Hill, in Cass county, Mo., with the view and to the legal effect of making it her separate estate. The proof tended to show that the husband afterwards used this property in his business, and that at the time it was so used it was of the value of $27,000; that in 1877 they came to Texas, and the husband went into business in Waco, Tex., where he owned and used as his place of business a certain lot and improvements suitable therefor; that on the 5th of September, 1888, while using the same as his place of business, he conveyed the ground and buildings thereon to his wife, the claimant, reciting in the deed as follows:

"For and in consideration of sixteen thousand dollars, to me in hand paid by my wife, Mattie A. Hinchman, said sum being the estimated value of the property hereinafter described, and which sum is a credit in my favor upon a balance of twenty-six thousand seven hundred and six dollars, which I owe my wife for property and money belonging to her separate estate, which I have heretofore used in my business, and for which, to the extent of the value of the property hereby conveyed, I now reimburse and pay her, leaving due her, after deducting payments already made, the sum of fourteen hundred and twenty-six dollars, have granted, sold, and conveyed, and by these presents do grant, bargain, sell, and convey unto the said Mattie A. Hinchman, to be held, owned, possessed, and disposed of by her as her sole and separate property and estate, all that piece or parcel of land situated, lying, and being in the county of McLennan, state of Texas, city of Waco, and described as follows."

On February 28, 1890, by deed duly acknowledged on the following day and recorded in the deed records of McLennan county, Mattie A. Hinchman and her husband, A. Hinchman, conveyed the Waco business lot to Sanford Johnson, reciting a cash consideration of $6,750, and the further sum of $6,625, due in one year from date, and a like sum due in two years from date, with 8 per cent. per annum interest thereon, as shown by two notes made by Johnson, payable to the order of M. A. Hinchman, and secured by vendor's lien on the property. There was proof tending to show that some of the personal property seized was purchased for M. A. Hinchman with the proceeds of the sale to Sanford Johnson. It was shown that on the 24th day of November, 1887, for a recited "consideration of $4,000, said sum being a part of her separate estate which I have used in my business, for which I now reimburse her, have granted, sold, and conveyed to said Mattie A. Hinchman, to be owned, used, and disposed of by her as her sole and separate estate and property, two cer-

tain tracts of land in Limestone county, Texas," etc. It was also shown that on the 5th of September, 1888, A. Hinchman conveyed to his wife certain ranch lands in Hamilton county, Tex., reciting a consideration of $———, the other recitals as to her separate estate being the same as in the deeds already mentioned; and on the same day, for a recited consideration of $3,000, with similar recitals as to payment on indebtedness, etc., conveyed to her certain cattle, horses, and other personal property described, and then on the ranch lands above mentioned. There was also proof that the separate property of M. A. Hinchman at Pleasant Hill, Mo., was traded for certain lots in Kansas City, which were conveyed to A. Hinchman by deed dated March 1, 1887, reciting a consideration of $27,000, which he conveyed to Henry J. Blanchard by deed dated October 25, 1888, upon a recited consideration of $30,000, showing that said property was subject to an incumbrance of $10,000 given to the National Loan & Trust Company. On the same day (October 25, 1888) Blanchard and wife conveyed the same property to Mattie A. Hinchman, with the same recitations. It was shown that the Pleasant Hill property was worth $27,000 at the time it was traded for the Kansas City lots, and that these had steadily decreased in value, and at the time of this trial were not worth more than $10,000, if free of incumbrance.

On the trial, while A. Hinchman was on the stand as a witness for the claimant, he was asked "if he knew whose money paid for the property seized," and "if he knew from what source the money was received which paid for it." Plaintiff's counsel objected to this question, and to the evidence which it was designed to elicit, for the reason that it involved a transaction between the witness and the deceased, M. A. Hinchman, and that the witness had not been called to testify concerning the same by the plaintiff; and the court excluded the testimony on the ground that the witness, through all the transactions, was acting as agent for the claimant, and that the proposed testimony involved transactions between the witness and the claimant, and hence could not be introduced. Claimant attempted to make similar proof in reference specially to the mules seized, which was objected to on the ground that it involved a transaction between the witness and the claimant for which the plaintiff had not called him to testify. "The court was of opinion that the matter involved a transaction with the deceased, which the statute forbids, and the plaintiff's objection to the evidence was sustained." The claimant offered to prove by Louis A. Hinchman that the money paid for the sheep in controversy was derived from the sale to Johnson of the business homestead lots in Waco. Plaintiff objected to this proof on the ground that claimant had shown no title in herself to that Waco property as a part of her separate estate; that claimant had not shown that her husband owed her any sum whatever; that the different conveyances to her showed that they were made for the purpose of defrauding the creditors of A. Hinchman, and that no gift of exempt property had been pleaded. The court sustained the plaintiff's objection to the testimony. The proof was conflicting as to the value of the property surrendered to the claimant. When the

proof was closed, counsel for the claimant offered to address the jury, but was prevented from so doing by the court; the trial judge stating to counsel that it was useless for him to address the jury, as a peremptory instruction to find for the plaintiff would be given. Counsel claimed that they had the right to address the jury upon the question as to whether or not, under the evidence, the several transfers which had been introduced in evidence were made for the purpose of defrauding creditors or for the purpose by A. Hinchman of paying a debt which he owed his wife for property of hers, which he had used; and also to address the jury upon the value of the property seized, as to which there was a material conflict in the evidence. Counsel's claim to address the jury was refused. The claimant duly excepted to the adverse rulings of the court and to the general charge to find for the plaintiff, and reserved and presents the exceptions by proper bill, on each of which error is assigned.

Acanthus Hinchman, having become a party to the suit as executor of the deceased claimant for or against whom judgment would be rendered, could not be allowed to testify against the adverse party as to any transaction had with the testatrix, unless called by the opposite party, or required to testify thereto by the court. Rev. St. U. S. § 858. We do not clearly perceive how the trial judge reached the conclusion that the matters about which it was proposed to examine A. Hinchman were transactions with the deceased testatrix. Is not a witness, although, as legal representative, a party to the suit, competent to testify about incidents occurring with third parties for the benefit of the deceased? It does not appear that Mrs. Hinchman, if she had been in life, could have been herself a witness, whose testimony might have conflicted with Hinchman. If he had been offered to testify against her interest in a matter she might, if alive, have contradicted, or to a transaction between her and the plaintiff, the reason of the rule might have excluded him. To apply the statute as the circuit court has done in this case would take us beyond the reason of the law. Besides, the plaintiff had examined this witness as to the execution of his deed of November 23, 1887. to the lands in Limestone county, and also his deed of September 5, 1888, for the Pancake or Neill's Creek ranch in Hamilton county, and had offered these deeds in evidence, with their recitations as to the consideration; and it is not so clear that, having been called by the plaintiff to testify at all as to the execution of these deeds thus put in evidence against him, he should not have been allowed to speak fully as to the consideration. We are of opinion that the court erred in giving the general charge to the jury to find for the plaintiff. The deeds from Acanthus Hinchman to his wife, which were offered in evidence, are not manifestly fraudulent. Each, taken on its face, shows a good, a valuable, and an adequate consideration, and each is effective to convey the estate it purports to convey if its language speaks the truth as to its consideration and purpose. The inference of fact to be drawn from the time when each was made, and from other proof touching the condition of the grantor's business, whatever may be its force, is certainly within the province of the jury to determine. While such transactions between husband and

wife will be scrutinized closely, and will not be permitted to cloak a fraudulent purpose, the good-faith preference of a wife's claim over the liability to other creditors by even a failing debtor will not raise a presumption of fraud.    It seems to be established by the proof that about 10 years before those conveyances were made the claimant had a separate estate of about the value of $27,000.    It appears that her husband exchanged her property for land, the title to which he took in his own name; that nearly two years after this transaction he caused this property, then incumbered to the extent of $10,-000, to be transferred to his wife.    It does not appear what the value of the property was at the time of this last transfer.    It is proved that the consideration recited was nominal.    It does not appear that it is now worth more than $10,000 free of incumbrance. Upon the whole record it appears to us that a reasonable mind might conclude that the husband had not, before the 5th of September, 1888, fully repaid his wife, or restored to her separate estate the value of the Spring Hill property, which he had at one time converted to his own use.    There are, therefore, issues here which should have been submitted to the jury under proper instructions.    It is also clear to us that counsel should have been permitted to address the jury on these issues, and as to the value of the property seized.    It follows that the judgment of the circuit court must be reversed, and this cause remanded, with directions to that court to award a new trial.