## HINCHMAN et al. v. PARLIN & ORENDORFF CO.

(Circuit Court of Appeals, Fifth Circuit. May 18, 1897.)

### No. 56.

FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—INSTRUCTIONS TO JURY.

On a question as to the validity, as against creditors, of a conveyance of property from a husband to his wife, in payment of an alleged indebtedness, a charge which expressly leaves the question of the bona fides of such indebtedness to the jury is not erroneous, though it calls attention to the absence of any notes, book charges, or other contemporaneous evidence of the debt.

In Error to the Circuit Court of the United States for the Northern District of Texas.

D. A. Kelley, for plaintiffs in error.

N. F. Short, for defendant in error.

Before PARDEE and McCORMICK, **Circuit Judges,** and NEW-MAN, District Judge.

McCORMICK, Circuit Judge.    This case was before us at our last term.    The issues of law and fact involved in it are fully discussed in our opinion, reported in 21 C. C. A. 273, and 74 Fed. 698.    Upon a second trial in the circuit court the judge charged the jury as follows:

"The jury will find that if Mrs. Hinchman sold Mr. Hinchman this property for $27,000 in cold cash, and intended to hold him for that amount of money afterwards, at the time of the transaction, then he was in debt to her in that amount.    That is the law.    She had the right to sell, and he the right to buy, that which he had given her; no doubt about that.    The question for this jury is, what were they doing?    Was that such a sale as two strangers would make one to the other, or was it a part of a transaction to cover up something that was to be done?    Or, admitting that it was the wife's property, was it such a transaction, then and there understood between them that it was to be her land, and it was only to enable him to raise $10,000 upon it, and transfer it back to her?    If it was that, then he owed her $10,000 that he got, and not the full price of the property.    If, on the other hand, he bought that property bona fide at the time, for $27,000, and mortgaged it for $10,000, and then deeded it back to her when it was not worth more than the mortgage on it, as claimed by the defendants, then, under that circumstance, he owes her $27,000; no doubt about that.    That, as I understand it, is the contention of Mr. Hinchman and his counsel.    If the jury finds that to be the fact, then he owes her that amount of money.    A debt, gentlemen, is a matter that is familiar to every juryman.    You all know what a debt is.    That does not need any explanation, to tell you what a debt is, nor does it need any explanation as to how debts are evidenced.    Did Mr. Hinchman owe his wife $27,000?    Was any record ever made of this transaction?    Did he ever make any entry on his books of the $27,000 or the $10,000?    Did he enter any credit for his wife, or debit himself or firm, for any amount of money?    Did any paper pass between him and his wife?    Has there been anything produced that will show that he owed this debt, other than the deeds produced in evidence?    The jury will say whether that is so or not as between strangers, for, I repeat, a transaction of this kind between husband and wife must have as good support as between strangers.    I have been asked by Mr. Hinchman's counsel to charge you, and the court so charges you, that a man is the lawful guardian or agent of his wife's property if she has any.    But, gentlemen of the jury, how do agents generally carry out an agency?    Do they keep any account of their agencies?    Do they render any account of what they get?    If so, how and when?    Was there any accounting of the agency between Mr. Hinchman and his wife?    You will remember money was paid occasionally to the wife?    Have we any account of it, or were there any entries made at the time?    I want to call your attention, gentlemen of the jury, particularly to the word 'then'; not what was done afterwards, not what comes now to protect something which was protected before.    How do people transact business at the time the transaction takes place?    You make a transaction with a man, and an entry is made.    You take some account then.    You keep some record of it.    Has there been any record shown here as agent for anybody?    Has there been any bank account showing Mr. Hinchman was keeping account as agent for his wife?    Gentlemen of the jury, it is for you to say.    I say it again, it is for you to say.    The court does not propose to interfere with your duty to determine the facts.    Did any agency exist then, and what evidence have we of it?"

This charge is made the basis of the fourth assignment of error, and the plaintiffs in error complain that:

"This charge complained of was very prejudicial to the claimant.    It instructed the jury substantially that the transactions between husband and wife

were to be scanned with the same strictness as those of strangers dealing with each other at arm's length; that, when strangers deal with each other, they keep an account of it, either a note or a book entry; and that, when an agent acted for his principal, he kept a record of what he did; and that when a woman came into court, claiming that her husband had been acting as her agent, and that he owed her money, and could not show up any note or book accounts evidencing the debt, that such evidence was insufficient, as strangers did not do business in that way, and that her claim must fail."

It is manifest, upon the consideration of the case as presented to us at the former term, and as discussed in our opinion, then delivered, and from the consideration of the record now before us, that on the last trial the issues between the parties had been reduced to the single question of fact: Did A. Hinchman, in transferring all of his property to his wife in 1888, in good faith prefer her as a creditor, or were the transactions had for the purpose of withdrawing all of his property from the claims of his bona fide creditors? In considering this question, it was important to determine whether, in fact, he owed his wife a debt at the time, and, if so, what was the amount of that debt. If the proof was such as to satisfy the jury that the husband did not in fact owe a debt to the wife on account of dealings there had been between them, or if they were satisfied that he did not owe more than one-third of the amount he claimed to have owed and that she claimed he owed her, and that the adjustment made between them in 1888 was in the nature of an afterthought, and for the purpose of withdrawing his property from the claims of his bona fide creditors, the claim of the wife urged in this action would necessarily fail. It was the turning point in the case. It was not only the privilege, but it was the duty, of the trial judge to group the testimony, and focus it upon this vital issue. It was his duty to submit to the jury the issue of fact, and to have them fully understand that the determination of that issue was theirs, and not his. A careful examination of the charge complained of satisfies us that the judge did not go beyond his duty in the charge given. The law applicable to the issue was given as fully and as fairly as the claimant could ask; in fact, as fully as the claimant did ask. The power and right of the jury to pass upon the issue of fact were stated and restated with clearness and emphasis. The jury having found upon this issue against the claimant, the other questions presented on the trial below, and brought up by bill of exceptions for our review, become immaterial. We find no substantial error in the rulings of the circuit court at the last trial. The judgment of that court is therefore affirmed.